No. 12,732.

ZIMBELMAN ET AL. *v.* HARTFORD FIRE INSURANCE COMPANY.
(22 P. [2d] 866)

Decided April 24, 1933. Rehearing denied June 5, 1933.

Mr. OLIVER TOLL, Mr. ALBERT P. FISCHER, for plaintiffs in error.

Mr. HUBERT D. WALDO, JR., Mr. PAUL W. LEE, Mr. GEORGE H. SHAW, Mr. DONALD C. McCREERY, for defendant in error.

*In Department.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

THIS is an action by Elisabeth Zimbelman, John J. Zimbelman and Oliver W. Toll as plaintiffs below, plaintiffs in error here, against the Hartford Fire Insurance Company, defendant below, defendant in error here, to recover a fire loss on a barn located on a ranch in Weld county, Colorado, under a fire insurance policy thereon issued by the company to plaintiff Toll on January 26, 1926. The barn was destroyed by fire March 31, 1928. The defendant's demurrer to the complaint, because of insufficient facts to constitute a cause of action and for misjoinder of the parties plaintiff, was sustained by the district court upon both grounds. The plaintiff elected to stand upon the complaint whereupon the court entered a judgment dismissing the action and plaintiffs are here with their writ of error.

The essential allegations of the complaint are in substance as follows: plaintiff Toll, on January 26, 1926, owned a ranch property in Weld county and on that day

there was issued to him by the defendant insurance company a policy of fire insurance upon a barn situate thereon. The provisions of the policy which are material here are the following: It is stipulated and agreed that if the property or any part thereof shall become mortgaged or encumbered, or in case any change shall take place in title or interest or possession, or if the assured shall not be the sole and unconditional owner in fee of said property, or if this policy shall be assigned without the written consent hereon then in each and every one of the above cases this policy shall be null and void. It is hereby understood and agreed by and between this company and the owner of the barn that this policy is made and accepted in reference to the foregoing terms and conditions, and that a breach of any of its conditions shall forfeit this entire policy as to all of the subjects of insurance named herein. This policy, or any endorsements thereon, or attached thereto, of any kind, shall not be valid until countersigned by the Secretary or General Agent of the Farm Department at Chicago, Illinois, who alone shall have power or authority to waive or alter any of the terms or conditions of this policy or to make or attach endorsements hereon. This policy is not assignable for the purposes of collateral security, but only when there has been an actual sale and transfer of the title to the property insured and no assignment to the new owner will be valid until and unless written consent is endorsed hereon by the Company at its Western Farm Department office in Chicago, Illinois.

After the issuance of this policy and on October 26, 1927, the plaintiff Toll entered into an agreement for the sale of the ranch property, including the barn upon which the policy of insurance had been issued, to the plaintiffs Zimbelman and his wife, and pursuant to such agreement in January, 1928, conveyed the premises upon which this barn was located to the plaintiff Elisabeth Zimbelman by warranty deed, and about the same time the two Zimbelmans executed and delivered to plaintiff Toll their

deed of trust upon the premises to the public trustee of Weld county to secure the balance of the purchase price of $11,000 out of the total consideration of $11,500. No assignment of the policy by Toll was made to the Zimbelmans, or either of them, nor did Toll or his grantees apply to defendant for its consent to such transfer. Thereafter, on March 31, 1928, the barn was destroyed by fire. The defendant company refused to pay the loss and the prayer of the complaint is for a judgment against it for $1,000, the extent of the loss and the amount of the insurance policy.

The following additional averments of the complaint, in view of the argument made by the plaintiffs in error in their briefs, should be stated as throwing light upon the nature of the controversy and the grounds relied upon for recovery on the policy of the amount of the insurance therein provided for. Plaintiffs allege that at the time of the issuance of this policy the property was in possession of tenants who had no interest in the fee and were not particularly interested in the preservation of the buildings thereon. At that time it was the intention of the plaintiff Toll to sell or otherwise dispose of his ranch to some reliable purchaser and to retain the insurance for the benefit of the parties concerned, of which the defendant had notice at the time the policy was issued. Then follows an allegation, upon which plaintiffs chiefly rely, that it is the generally established and well-known custom of insurance companies to pay all legitimate and bona fide claims promptly and not to refuse to pay the same for losses sustained within the true intent of the policies, or to equivocate or to delay over technical defenses ;which defeat the true intent and meaning of the policies of insurance and defeat the inherent rights of the parties thereto. There is a further allegation that when the policy was issued it was represented to Toll by the defendant through its agent, that the defendant was issuing the policy to plaintiff in good faith; that the terms and conditions thereof were made in accordance

with the dictates of right and good conscience; that the technical conditions, qualifications and defenses contained therein limiting its liability were intended only to protect defendant from imposition and were not intended to be asserted to defeat just claims, but that any loss sustained would be adjusted in an equitable manner, and that Toll in taking out the insurance relied upon such representations and customs and usages of insurance companies in entering into the contract and paying the amount of the insurance premium on the policy. The complaint further sets forth the agreement of sale and purchase entered into between Toll and the Zimbelmans and states that it was agreed, in event that plaintiff Toll did not have valid title to the property, legal title should be reinvested in him and the Zimbelmans be repaid the amount of their payments, and the accounts between them should be adjusted upon an equitable basis. It is the general and well-established and well-known custom of insurance companies whenever there is a bona fide change of any interest in the ownership of property insured occurring without any intent to take advantage of the insurance company and without any tendency to increase the risk insured against, to permit a change of the beneficiary named in the policy, without objection on the part of the insurance company issuing said policy, and particularly when the newly named beneficiary is reliable and honest and is to occupy the premises, and that in such cases it is the general custom to treat and hold the written consent of the insurance company as a mere formality and not essential as affecting the rights of the parties. That it was the understanding of the parties that the property in question should be continued to be protected by the insurance policy and that Toll should hold his rights therein, subject to the interests of the Zimbelmans as grantees, and that the Zimbelmans made and delivered to Toll their promissory note for $11,000, payable in a fixed amount of twenty-two annual instalments which note was to be, and was, secured by a trust

deed upon the premises involved and that thereafter Toll, by warranty deed, conveyed the premises to Elisabeth Zimbelman alone. The complaint admits that no mention of this alleged conditional sale and purchase was made in the warranty deed or deed of trust, nevertheless it is alleged that said agreement for reinvesting the title was and still is in full force and effect. That by virtue of the transaction between Toll and the Zimbelmans the premises passed from uninterested persons to the care and supervision of responsible persons, namely, the Zimbelmans; that because of such facts the risk of loss of such property was not increased but diminished. The defendant had notice of the conditional purchase by the Zimbelmans and their interest therein and of the fact that it was the intention of the plaintiffs that the insurance would remain in force and effect for the benefit of plaintiffs as their interests might appear.

We have made this summary of the allegations of this unusual complaint, whatever its effect may be, as it sheds light upon the contentions of the plaintiffs in their briefs. The complaint does not allege an assignment of the insurance policy by Toll to either of the Zimbelmans, neither does it appear that any request by him was made of defendant for consent thereto, or that a request was made for consent by the insurer to the mortgage and incumbrance of the property by the trust deed from the Zimbelmans to Toll, or for an assignment of the insurance policy to Toll's grantees. It is apparent that these allegations of the complaint must have been, and were, intended as the ground work upon which the plaintiffs would, in the event of a trial , base evidence of confession and avoidance for their failure to follow the terms of the insurance contract. By way of further explanation, it is proper to state that the object of the complaint in the present action by Zimbelmans and Toll against the insurance company is a recovery on account of loss by fire of the insured barn. There is no allegation in this complaint whereby a recovery is sought as against the insurance

company of the unearned portion of the premium prescribed by the insurance policy from the date of the cancellation thereof to the original expiration of the date of the policy.

We premise the discussion with the statement that if a precedent for the voluminous complaint in this case exists in any of the reported cases of the courts of this country our attention has not been called to it. While this is not conclusive that the complaint is subject to a general demurrer upon the ground of insufficient facts, it is highly probable that if any such case is in existence it would have been discovered by the diligent efforts of the counsel for the plaintiffs. That provisions in an insurance policy like those in this one, that in case any change shall take place in title or possession of the property, or if the insured shall not be the sole and unconditional owner in fee thereof, or if the policy shall be assigned without the written consent of the insurer, the policy shall be null and void, are valid and enforceable is well established by the uniform course of decisions by appellate courts of the United States. Here the insured violated the plain and unequivocal provisions of this insurance contract. After it was issued to Toll he sold and conveyed his interest in the insured property, and, if he assigned the policy to his grantees, he neither asked nor received the written consent of the insurance company thereto. The policy stipulated that in each and every one of the contingencies above mentioned, the policy shall be null and void, and that a breach of any such provision shall forfeit the entire policy as to all of the subjects of insurance named therein. The policy specifically provides that where, as here, there has been an actual sale thereof by the insured, the insurance policy becomes null and void and of no effect, unless the written consent by the insurer is endorsed thereon. This policy was assigned by Toll without any request by him of the insurance company to give its consent thereto, and the insurer did not know of such sale and assignment until after the

loss by fire. He transferred the property without asking for or obtaining such consent. In at least four particulars the provisions of the insurance policy were violated without any valid excuse given therefor. In *Scania Insurance Co. v. Johnson,* 22 Colo. 476, 45 Pac. 431, the provisions in the insurance policy were the usual ones such as are present in the case now under consideration. We held there that the sale of property by the insured without the consent of the insurer was a violation of the conditions of the insurance contract which by express provision invalidated the policy. At the time of the fire the mortgagor had parted with all of her interest in the property and had transferred title, and we held that she suffered no loss as the result of the fire and there could be no recovery on the policy. One of the leading cases in this country is *Imperial Fire Ins. Co. v. Coos County,* 151 U. S. 452, 14 Sup. Ct. 379. At page 385 of that opinion the Supreme Court of the United States states the controlling principles applicable to the case now before us. The court held that provisions like those in the policy in the instant case were valid, and at page 466 of the opinion Mr. Justice Jackson said that the policy of insurance there under consideration contained the provision that it should not be assignable without the consent of the company expressed thereon. In case of assignment without such consent, whether of the whole policy or of any interest in it, the liability of the company in virtue of said policy shall thenceforth cease. This statement of the law was from the opinion in *Ferree v. Oxford Fire & Life Ins. Co.,* 67 Pa. St. 373, and was quoted with approval by Mr. Justice Jackson. There are many other cases to the same effect. A recent case is *St. Paul Fire Ins. Co. v. Ruddy,* 299 Fed. 189. In the exhaustive opinion by Circuit Judge Kenyon, the provisions of a contract of insurance, in substantially the same words as those in the contract now before us, were held valid and enforceable and a violation thereof voided the insurance policy. In a recent case, *Sun Insurance Office v. Scott,*

284 U. S. 177, 52 Sup. Ct. 72, it was held that such provisions in an insurance policy are valid and enforceable and that a violation thereof absolutely voids the policy. Indeed, we think that counsel for plaintiffs in error do not seriously question the general rule with reference to the validity of such clauses, but if they do they have not cited any well considered case by any respectable court that held them unenforceable.

Plaintiffs' own briefs disclose that their chief, if not their sole, reliance for reversal is upon the doctrine of waiver or estoppel and custom or usage, operating against the insurance company, with respect to the violated terms and conditions of the policy. As will appear from the summary of the allegations of the complaint, and as counsel themselves state in their briefs, they rely upon the alleged prevailing custom of insurance companies generally to establish their proposition that a waiver or estoppel occurred here. Counsel thus summarize their contentions: (1) It is the custom of all insurance companies to pay promptly all legitimate and bona fide claims on their policies; (2) it is the custom of insurance companies not to refuse to pay legitimate bona fide claims for losses sustained within the true intent of the policy; (3) it is the custom of insurance companies whenever there is a bona fide change of any interest in the ownership of the property insured to permit a change of the beneficiary named in the policy; (4) the custom to treat and hold the written consent of the insurance company to such change of interest is a mere formality and not essential as affecting the rights of the parties.

It is true that provisions in an insurance policy, that it shall be void under certain conditions, may be waived by the insurer and an estoppel in pais may be successfully asserted against the defendant who asserts a policy is void because of a violation of some provision therein. Waiver and estoppel are sometimes used in insurance law interchangeably and indiscriminately. *German American Ins. Co. v. Hyman*, 42 Colo. 156, 171, 94

Pac. 27. However that may be, there was no waiver by the defendant of the provisions of this insurance policy and it is not estopped under the facts of this case to assert their validity. The only semblance of merit in any claim made by the plaintiffs rests solely and exclusively upon what is said to be the general custom of insurance companies.

Counsel for plaintiffs, however, apparently have overlooked the fact that usage or custom is never admissible to vary or contradict the terms of a written contract, but only to interpret it as understood by the parties at the time it was made. *Heistand v. Bateman,* 41 Colo. 20, 23, 91 Pac. 1111. In *First National Bank v. Londonberry Co.,* 50 Colo. 85, 94, this court, in speaking to the subject says: "The admission of the letters would be an attempt, in another manner, to aid the bank in its efforts to contradict the provisions of a written contract by showing that the clerk had ascertained from other banks what their custom was, and what they would do concerning such matters. Evidence of custom is never admissible to contradict the terms of a written instrument." In *Moore v. United States,* 196 U. S. 157, 166, 25 Sup. Ct. 202, it was said: "The effect of usage upon the contracts of parties has been decided many times. It may be resorted to in order to make definite what is uncertain, clear up what is doubtful, or annex incidents, but not to vary or contradict the terms of a contract." In The Reeside, 20 Fed. Cas. 458, No. 11,657, 2 Sumn. 567, Mr. Justice Story, speaking to this subject, stated: "The true and appropriate office of a usage or custom is to interpret the otherwise indeterminate intentions of parties, and to ascertain the nature and extent of their contracts, arising, not from express stipulations, but from mere implications and presumptions, and acts of a doubtful or equivocal character. * * * But I apprehend, that it can never be proper to resort to any usage or custom to control or vary the positive stipulations in a written contract, and, a fortiori, not in order to contradict them. * * *

But a written and express contract cannot be controlled, or varied, or contradicted by a usage or custom; for that would not only be to admit parol evidence to control, vary, or contradict written contracts, but it would be to allow mere presumptions and implications, properly arising in the absence of any positive expressions of intention, to control, vary, or contradict the most formal and deliberate written declarations of the parties.'' Upon the subject generally we refer to 17 C. J. 508-516, where it is said that this principle enunciated by Mr. Justice Story is applicable to insurance contracts.

Applying the principles of law enunciated in our own opinions and other cases, we say that the terms and conditions of this insurance policy relied upon by the insurance company to defeat the action, are valid and enforceable. There is no question that they were violated, and it is equally true that there was no waiver of, or estoppel raised against the reliance by the insurance company upon, these principles.

There is one other matter which the plaintiffs have discussed, though it was not properly raised below, and objection to the ruling thereon is not preserved as our rules require. Plaintiffs say that they have not received from the defendant the unearned premium which the plaintiff Toll paid when he obtained the insurance contract, and because he has not received the same it was error for the court to dismiss the action. But it appears from the record in this case that before the action was begun, and the fact is not denied by plaintiffs' counsel, indeed he tacitly admitted it in open court, the insurance company, by its attorney, tendered to Toll the full amount of the unearned premium, which he refused to accept. Plaintiffs, therefore, may not, upon this hearing and in these circumstances, be heard to say that the judgment should be reversed because of the failure of the insurance company to return to them the unearned premium on the cancelled policy. While this fact of a tender and refusal may not be saved by the record prop-

er, nevertheless in open court the statement by the defendant's counsel that the plaintiffs refused to accept, was not denied, but tacitly admitted by Toll, one of the plaintiffs and attorney for all of them.

The judgment is affirmed.

MR. CHIEF JUSTICE ADAMS and MR. JUSTICE HILLIARD concur.