Christopher S. STRUBLE and Carol S. Struble, Plaintiffs–Appellants,

v.

AMERICAN FAMILY INSURANCE COMPANY, Garnishee, Appellee.

No. 06CA0522.

Colorado Court of Appeals, Div. IV.

Oct. 18, 2007.

Mulliken Weiner Karsh Berg & Jolivet, Gregory M. O'Boyle, Colorado Springs, Colorado, for Plaintiffs–Appellants.

Lambdin & Chaney, LLP, L. Kathleen Chaney, Laura Trask Schneider, Denver, Colorado, for Garnishee–Appellee.

Opinion by Judge FURMAN.

In this garnishment proceeding to determine insurance coverage under a commercial general liability (CGL) policy, the judgment creditors, Christopher S. Struble and Carol S. Struble, appeal the summary judgment in favor of the garnishee, American Family Insurance Company. The garnishment arises in connection with a default judgment previously obtained by the Strubles in an action against defendants, Timothy and Cheryl Fox (collectively, Fox) and Central Colorado Roofing of Colorado Springs, Inc. (CCRI). The Strubles alleged Fox was insured under a CGL policy issued by American Family, but the district court ruled otherwise. We reverse and remand for further proceedings.

## I. Background

E.C. Schwartz owned Central Colorado Roofing (CCR). American Family had issued a CGL insurance policy to Schwartz, doing business as CCR. The policy provided coverage of $1 million for a single occurrence and $2 million for aggregate policy limits.

Schwartz sold CCR to Fox, who filed articles of incorporation and changed the name of the company from CCR to CCRI. Fox then met with an American Family agent sometime in February 2003 to obtain insurance for CCRI. Fox claimed that at this meeting, the agent sold him an insurance policy.

On February 13, 2003, American Family provided a certificate of insurance to the Piles Peak Regional Building Department. It listed Fox and CCR as insureds and stated the policy was effective until March 30, 2003.

In the meantime, the Strubles contracted with CCRI, using a CCR form contract, to replace their hail-damaged roof. CCRI began to tear off the old roof in early March 2003, leaving an unfinished portion over the kitchen, bathroom, and laundry room exposed to the elements.

On March 17, 2003, a large snowstorm caused significant water damage to the Strubles' house. The Strubles filed suit against Fox, CCRI, their own homeowners insurance carrier, and Schwartz, alleging that, because their roof had been removed and CCRI had not protected their home from the elements properly, they sustained significant property damage.

The Strubles reached a settlement both with their homeowners insurance carrier and with Schwartz, and subsequently obtained a default judgment against Fox and CCRI for $60,686.49.

The Strubles served a writ of garnishment on American Family, seeking to garnish an insurance policy for the payment of the full amount of the default judgment. In its answers to the writ of garnishment, American Family denied any obligation. The Strubles thereafter filed a traverse.

Before a hearing was held on the traverse, American Family filed a motion for summary judgment. Attached to its motion was the Schwartz insurance policy. The effective period of this policy was from February 12, 2003 to February 12, 2004. The policy provided:

> Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

> If this policy has been in effect for sixty days or more, or is a renewal of a policy we issued, we may cancel this policy by mailing through first-class mail to the first Named Insured written notice of cancellation ... [a]t least 45 days before the effective date of cancellation if we cancel for any other reason.

> We may only cancel this policy based on one or more of the following reasons[:] ... [a] substantial change in the exposure or risk other than that indicated in the application and underwritten as of the effective date of the policy unless the first Named Insured has notified us of the change and we accept such change.

The Strubles filed a response to American Family's motion for summary judgment. Attached to its response was an affidavit from Fox and several documents. The Fox affidavit stated:

> On November 15, 2002, Bud Schwartz sold the business "Central Colorado Roofing" and his interest in the name "Central Colorado Roofing" to me pursuant to an "Agreement for Sale of Business Assets." I formed the corporation Central Colorado Roofing of Colorado Springs, Inc. to conduct the Central Colorado Roofing business purchased from Mr. Schwartz.

> In or around February 2003, I met with [the agent] to discuss obtaining insurance from American Family Insurance Company for Central Colorado Roofing. I informed [the agent] when we met that I had purchased Central Colorado Roofing from Mr. Schwartz, and we discussed the fact that I needed to insure Central Colorado Roofing. [The agent] did not inform me of any issues with obtaining the insurance, and he proceeded to write a policy of insurance. At that time, I entered into an agreement with American Family Insur-

ance for a policy of general liability insurance issued to Central Colorado Roofing, and I paid approximately two months of insurance premiums by providing a check payable to American Family Insurance to [the agent].

When I left [the agent]'s office, I believed I was insured by American Family Insurance, and I acted accordingly. If I would have known that American Family Insurance took the position that my company was not insured, I would not have paid the premiums to American Family Insurance, and I would have cleared up the misunderstanding regarding the state of Central Colorado Roofing's insurance prior to performing work for customers such as [the Strubles].

At some point, I received notice from American Family Insurance that [it] did not intend to extend the policy beyond March 30, 2003.

Notes of a telephone conversation, taken by American Family, discussed the meeting Fox had with the American Family insurance agent. The agent told Fox that, because CCRI's business would be sixty percent commercial roofing, American Family would not renew the Schwartz policy. American Family sent out a nonrenewal notice that extended the Schwartz policy forty-five days, or until March 30, 2003. The agent did not know why American Family issued the certificate of insurance in Fox's name.

An internal memo between two employees of American Family questioned whether American Family would allow a policy to continue after a change in ownership without being rewritten completely.

An email between two employees of American Family stated the company would not provide coverage for Fox because of the amount of commercial roofing work done by the business. It further stated, "[A]pparently we have a cancellation effective for 3/30/03."

American Family filed its reply, and submitted the affidavit of a Colorado manager that stated Fox and CCRI were not named insureds on the Schwartz policy, and American Family records showed no policies issued to Fox or CCRI. The affidavit of the insurance agent for American Family likewise stated Fox and CCRI were not named insureds on a policy, and that, because of CCRI's business plans, American Family refused to insure them. It further stated:

Instead of canceling on February 12, 2003, the policy renewal date, American Family extended the Bud Schwartz, DBA Central Colorado Roofing policy ... for a forty-five day period, through March 30, 2003.

Because the Bud Schwartz, DBA Central Colorado Roofing policy ... was extended for 45 extra days, on February 13, 2003, a new Certificate of Insurance was issued to the Pikes Peak Regional Building Department by my office.

My office accidentally issued the Certificate of Insurance in Tim Fox's name, but showed the Business as Central Colorado Roofing. The certificate should have been issued in Bud Schwartz' name.

Tim Fox and Central Colorado Roofing of Colorado Springs, Inc. never filled out an application for insurance, and a separate policy of insurance from American Family Insurance was never issued in either Tim Fox's name or to Central Colorado Roofing of Colorado Springs, Inc. [sic]

After reviewing the affidavits, the district court agreed with American Family and granted the motion for summary judgment. The court found that American Family had not issued a new policy to Fox or CCRI, that as a matter of law the certificate of liability insurance did not create a contractual relationship, and that the policy issued to Schwartz was not transferable. The Strubles appeal the district court's summary judgment.

## II. Standard of Review

■ Appellate review of summary judgment is de novo. *Aspen Wilderness Workshop, Inc. v. Colo. Water Conservation Bd.,* 901 P.2d 1251, 1256 (Colo.1995).

■ Summary judgment is appropriate when the pleadings and supporting documents demonstrate that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.

C.R.C.P. 56(c). A material fact is one that will affect the outcome of the case. *GE Life & Annuity Assurance Co. v. Fort Collins Assemblage, Ltd.*, 53 P.3d 703, 706 (Colo.App. 2001). When the pleadings and affidavits show material facts are in dispute, it is error to grant summary judgment. The facts must be viewed in the light most favorable to the nonmovant. *Id.*

### III. Summary Judgment

The Strubles contend the district court erred in granting summary judgment in favor of American Family, and genuine issues of material fact exist as to whether Fox was covered under an American Family policy. We agree.

■■■ American Family's motion for summary judgment was filed in the context of a C.R.C.P. 103 garnishment proceeding. In such a proceeding, the judgment creditor's rights against the garnishee are no greater than those of the judgment debtor. *See State v. Elkins*, 84 Colo. 409, 414, 270 P. 875, 877 (1928). "[U]nder C.R.C.P. 103, the judgment creditor who is attempting to enforce the debt has the burden of proving the existence and validity of the indebtedness of the garnishee." *Maddalone v. C.D.C., Inc.*, 765 P.2d 1047, 1049 (Colo.App.1988); *see Gen. Accident Fire & Life Assurance Corp. v. Mitchell*, 120 Colo. 531, 538, 211 P.2d 551, 555 (1949). Thus, the garnishee is treated in the same manner as if he had been sued directly on the debt by the judgment debtor. *Maddalone*, 765 P.2d at 1049.

The Strubles can recover from American Family in this garnishment proceeding only if Fox, the insured, had a right to do so. *See Martinez v. Villa Constr. Corp.*, 38 Colo.App. 302, 304, 563 P.2d 954, 955 (1976). The Strubles contend Fox had such a right, and that material issues of fact exist that preclude summary judgment based on: (1) Fox's affidavit; (2) the certificate of liability insurance; (3) American Family waiving the nontransfer clause in the existing insurance policy; and (4) estoppel. We agree with each contention.

### A. Fox's Affidavit

Initially, American Family contends that portions of Fox's affidavit could not be considered in evaluating the motion for summary judgment. We agree with American Family, but nevertheless conclude that Fox's affidavit raises material issues of fact that preclude summary judgment in this case.

C.R.C.P. 56(e) provides, "Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." *See Credit Serv. Co. v. Dauwe*, 134 P.3d 444, 447 (Colo. App.2005) (documentary attachments that were not in accordance with C.R.C.P. 56(e) were insufficient to raise genuine issues of material fact); *see also Washington v. Maricopa County*, 143 F.2d 871, 872 (9th Cir. 1944)(no sworn or certified copies of numerous papers referred to in affidavits were attached, and, accordingly, all references to such papers should have been disregarded).

■■■ Although we will not consider documents that are not attached to the affidavit, we may consider the portions of the affidavit that do not depend entirely on the documents. *See Albright v. Virtue*, 273 F.3d 564, 574–75 (3d Cir.2001); 10A Charles A. Wright & Arthur R. Miller, Mary Kay Kane, *Federal Practice and Procedure* § 2722, at 381–82 (3d ed.1998) ("averments in an affidavit purporting to present the substance of contracts will be admissible to show the fact that the agreements have been entered into or offered, but will be insufficient to prove the terms of the agreements unless sworn or certified copies of them are attached to the affidavit").

■■■ In his affidavit, Fox referred to a policy written for him. We disregard references to this document because a copy was not attached to his affidavit. In light of the American Family agent's affidavit, we conclude no genuine issue of material fact existed as to whether a new insurance policy was issued to Fox.

■■■ However, Fox's statements that he entered into an agreement with American Family for general liability insurance, paid a premium, believed he was insured, and relied on that belief, may still be considered be-

cause they do not depend entirely on documents, and show genuine issues. of material fact that coverage existed or should be implied by operation of law, at least through March 30, 2003.

### B. The Certificate of Liability Insurance

The Strubles contend the certificate of liability insurance American Family issued in Fox's name to the Pikes Peak Regional Building Department shows Fox may have had coverage until March 30. We agree.

■■■ Although a certificate of insurance does not create any type of contractual relationship for the benefit of the certificate holder, see *Broderick Inv. Co. v. Strand Nordstrom Stailey Parker, Inc.*, 794 P.2d 264, 266 (Colo.App.1990), American Family's use of Fox's name on the certificate of insurance, after discussing the change of ownership with Fox, may be material to whether American Family extended its policy with Schwartz to cover Fox or CCRI. We next turn to whether the policy precluded such a possibility.

### C. The Non–Transfer Clause in the Existing Insurance Policy

■■■ American Family contends the policy issued to Schwartz contained a clause that provided the policy could not be transferred without its written consent. According to American Family, because it did not consent, any policy that might have existed until March 30, 2003 insured only Schwartz and CCR, and was void upon transfer to Fox. The Strubles contend a disputed issue of fact exists that American Family waived its right to void the Schwartz policy. We agree with the Strubles.

■■■ When construing the terms of insurance policies, we apply principles of contract interpretation. *Thompson v. Md. Cas. Co.*, 84 P.3d 496, 501 (Colo.2004). We attempt to carry out the parties' intent and reasonable expectations when they drafted the policy. *Id.* Thus, we seek to give the words in a policy their plain and ordinary meaning, unless the intent of the parties indicates otherwise. *Id.* Where terms in a policy are ambiguous, we construe the terms

against the drafter and in favor of providing coverage to the insured. *See id.* at 502.

■■■ Where a clause in an insurance policy prohibits transfer without the insurer's consent, a breach of the clause generally does not make the policy void, but rather voidable at the option of the insurer, which may by act waive its right. 6A George J. Couch, *Cyclopedia of Insurance Law* § 92:34 (3d ed.2005); *see Zimbelman v. Hartford Fire Ins. Co.*, 92 Colo. 536, 544, 22 P.2d 866, 869 (1933) (provisions in an insurance policy that it shall be void under certain conditions may be waived by the insurer); *Lee Blakemore, Inc. v. Lewelling*, 281 F. 952, 958 (8th Cir.1922) (provision in fire insurance policy, declaring policy void following a change of title, merely made policy voidable by act of insurers); *Collard v. Universal Auto. Ins. Co.*, 55 Idaho 560, 45 P.2d 288, 293 (1935)(insurance company may elect, through agent, to continue insurance rather than cancel it, though policy provides it should be void for change of ownership).

Hence, the non-transfer clause in the Schwartz policy is not dispositive of whether American Family voided the policy or waived its rights and continued providing insurance to cover Fox or CCRI until March 30, 2003. The record reflects the insurance agent notified Fox, both orally and in writing, that the insurance policy continued in effect until March 30, 2003, and the certificate of liability insurance showed Fox as being insured until that date.

■■■ Moreover, an insurer may waive its right to void or cancel a policy by accepting premiums from the insured after it learned of the alleged grounds for cancellation of the policy. 2 Couch, *supra*, § 31:114. To determine whether an insurer has waived this right, the trial court should consider the following factors:

(1) whether insured was billed by insurer or merely by its general agent; (2) whether insurer had served notice of its election to rescind policy at time it accepted premium; (3) whether insurer's receipt of premium was inadvertent or intentional; (4) whether retention of premium was permanent or temporary; and (5) whether pre-

mium was returned within reasonable time after payment came to attention of responsible officials of insurer.

*Id.; see Sielski v. Commercial Ins. Co.,* 199 A.D.2d 974, 975, 605 N.Y.S.2d 599 (1993).

Fox's affidavit stated he paid American Family premiums, and American Family has not disputed or refuted that statement. Thus, a material fact exists as to whether American Family waived its right to void the Schwartz policy by accepting Fox's premiums.

### D. Estoppel: The Reasonable Expectations of Fox

■ The Strubles also contend that, because American Family's conduct generated reasonable expectations in Fox that he was insured until March 30 under the existing Schwartz policy, and therefore did not seek out other insurance, American Family is estopped from denying coverage through that date. We agree there is a genuine issue of material fact whether the course of action between the parties allowed Fox to rely reasonably on the expectation of insurance.

■ The elements of a promissory estoppel claim are: (1) the promisor made a promise to the promisee; (2) the promisor should have reasonably expected that the promise would induce action or forbearance by the promisee; (3) the promisee reasonably relied on the promise to his or her detriment; and (4) the promise must be enforced to prevent injustice. *Cherokee Metro. Dist. v. Simpson,* 148 P.3d 142, 151 (Colo.2006).

■ The rule of reasonable expectation, a hybrid of the common law doctrine of promissory estoppel, applies when a dispute concerns the existence of insurance coverage. *Leland v. Travelers Indem. Co.,* 712 P.2d 1060, 1064 (Colo.App.1985) (policy existed where form letter conveyed impression policy would be reinstated if unsigned check were promptly signed and returned); *see Peters v. Boulder Ins. Agency, Inc.,* 829 P.2d 429, 433 (Colo.App.1991). Under the rule, if an insurer wishes to avoid liability, it must use clear and unequivocal language expressing its intent to limit temporary coverage. When it does not do so, "coverage will be deemed to

be that which would be expected by the ordinary layperson, namely complete and immediate coverage upon payment of the premium." *Sanchez v. Conn. Gen. Life Ins. Co.,* 681 P.2d 974, 977 (Colo.App.1984) (quoting *Collister v. Nationwide Life Ins. Co.,* 479 Pa. 579, 388 A.2d 1346 (1978)); *see Peters,* 829 P.2d at 433.

■ American Family's reliance on *Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.,* 90 P.3d 814, 819 (Colo.2004), for the proposition that the existence of an insurance policy must be proved before the court applies the rule of reasonable expectations, is misplaced. *Cotter* states that the court attempts to carry out the parties' intent and reasonable expectations when interpreting insurance policies. *Id.* We perceive nothing in *Cotter* requiring the existence of the policy to be proved first, and we conclude the rule of reasonable expectations is appropriately used in determining the existence of an insurance policy. *See Leland,* 712 P.2d at 1064.

### E. Conclusions

We have decided the Strubles demonstrated no genuine issue of material fact as to a new insurance policy. However, we conclude that some coverage was in effect until March 30, in light of the Schwartz policy provision requiring forty-five days notice for cancellation, and the communications between American Family employees that show the policy was extended until that date. *See* § 10–4–109.7, C.R.S.2007 (requiring forty-five days advance written notice of cancellation of an insurance policy on commercial exposures such as general comprehensive liability).

In our view, genuine issues of material fact exist as to who was insured under the Schwartz policy, including specifically: whether Fox paid insurance premiums; whether American Family intended to insure Fox or mistakenly issued the certificate of insurance in his name; whether American Family waived the right to void the policy upon transfer by canceling the policy at a later date for a different reason (Fox's higher volume of commercial business); whether American Family consented in writing to in-

sure Fox until March 30, either by issuing a cancellation notice as of March 30 or by issuing the certificate of insurance; and whether American Family's conduct created a reasonable expectation of insurance in Fox, so that American Family was estopped from denying Fox insurance before March 30.

Accordingly, we remand to the district court to conduct a hearing on the traverse, to determine whether an insurance contract was created between Fox and American Family, and if so, to determine the rights and obligations that existed under that policy. *See Hoang v. Assurance Co.*, 149 P.3d 798, 801 (Colo.2007) (court applies principles of contract interpretation and attempts to carry out the parties' reasonable expectations when the policy was issued).

The judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

Judge WEBB and Judge LOEB concur.