209 P.3d 1181 (2009)
Larry BRIGGS, individually and on behalf of all others similarly situated, Plaintiff-Appellant,
v.
AMERICAN NATIONAL PROPERTY AND CASUALTY COMPANY, Defendant-Appellee.
No. 07CA2217.
Colorado Court of Appeals, Div. I.
March 5, 2009.
Certiorari Denied June 22, 2009.
*1183 Hill & Robbins, P.C., Robert F. Hill, John H. Evans, Jr., Nathan P. Flynn, Denver, Colorado; Evans & McFarland, LLC, J. Luke McFarland, M. Gabriel McFarland, Golden, Colorado; McFarland Law Offices, Zachary C. McFarland, Thomas D. McFarland, Golden, Colorado, for Plaintiff-Appellant.
Pryor, Johnson, Carney, Karr, Nixon, P.C., Robert W. Carney, John R. Paddock, Jr., Elizabeth C. Moran, Greenwood Village, Colorado, for Defendant-Appellee.
Roberts Levin Rosenberg, PC, Bradley A. Levin, Denver, Colorado, for Amicus Curiae Colorado Trial Lawyers Association.
Opinion by Judge RICHMAN.
Plaintiff, Larry Briggs, individually and on behalf of all others similarly situated, appeals the trial court's entry of summary judgment in favor of American National Property and Casualty Company (ANPAC). We reverse and remand for further proceedings.

I. Facts
Briggs purchased automobile insurance, including uninsured/underinsured motorist (UM/UIM) coverage from ANPAC on three motor vehicles from 1995 to 2002. His policy provided UM/UIM coverage for "Class One insureds," that is, persons named on the policy and their resident relatives, and "Class Two insureds," that is, other persons permissively occupying an insured vehicle. Briggs filled out an application form which provided options to purchase different limits of UM/UIM coverage on the policy without allowing for separate UM/UIM coverage or limits on particular vehicles. In other words, because ANPAC sold UM/UIM coverage on an all-or-nothing basis, Briggs had the option to purchase UM/UIM coverage for both classes of insureds on all of the vehicles he insured with ANPAC or to decline UM/UIM coverage entirely. This is called "multi-vehicle coverage" because one policy covered all of the vehicles Briggs insured with ANPAC.
By comparison, some insurers sell separate policies for each vehicle, or "single vehicle coverage," thereby providing their insureds different options for how they purchase UM/UIM insurance. For example, an insured might purchase UM/UIM coverage on a single vehicle, which would nonetheless, by operation of law, provide UM/UIM coverage for Class One insureds in any vehicle, and Class Two insureds in that single vehicle only. See DeHerrera v. Sentry Ins. Co., 30 P.3d 167 (Colo.2001); Jaimes v. State Farm Mut. Auto. Ins. Co., 53 P.3d 743 (Colo.App.2002). Or, an insured might purchase UM/UIM coverage on multiple vehicles, thereby receiving coverage for Class Two insureds in each of those vehicles as well.
Although ANPAC does not sell single vehicle coverage and charges one premium for UM/UIM coverage, its declaration form contains columns of premium amounts corresponding to each vehicle on the policy and lists separate premium amounts for each type of coverage on each vehicle, as well as a *1184 total premium for each vehicle. The form states: "ONLY THE INSURANCE COVERAGES INDICATED BY A SPECIFIC LIMIT OF LIABILITY AND/OR PREMIUM AMOUNT ARE PROVIDED." Briggs's declaration form lists UM/UIM premiums of $25, $6, and $30, which correspond to his three listed and insured vehicles.
In addition, Briggs's policy contains an owned-but-not-insured (OBNI) exclusion, purportedly limiting UM/UIM coverage if an insured were injured in a vehicle he owned but did not insure with ANPAC. According to the exclusion, UM/UIM coverage is not provided for "[b]odily injury or property damage sustained by a person while occupying or through being struck by a motor vehicle owned by you or a relative for which insurance is not afforded under this Part." However, OBNI exclusions were impliedly invalidated as against public policy in DeHerrera and expressly invalidated in Jaimes. The effect of these decisions was to provide Class One insureds UM/UIM coverage in any vehicle they occupy when injured, no matter who owns the vehicle or whether it is insured on the owner's policy. ANPAC continued to include the OBNI exclusion in its policies for nearly three years after DeHerrera was decided and did not inform its insureds that the exclusion was invalid or that the only benefit they received by purchasing UM/UIM coverage on multiple vehicles was that Class Two insureds received coverage.

II. Procedural History
This case began as a class action in the Boulder County District Court, with twenty-seven plaintiffs suing twenty-five insurance companies, and was later severed into many similar cases. The original plaintiffs alleged that the insurance companies induced them to purchase UM/UIM coverage by failing to disclose, after DeHerrera and Jaimes, that purchasing UM/UIM coverage on one vehicle provides coverage for Class One insureds in any vehicle, regardless of an OBNI exclusion. Therefore, they claimed, purchasing UM/UIM coverage on more than one vehicle damages the putative class members because they pay additional premiums without receiving corresponding benefits. The original plaintiffs alleged, generally, that this failure to disclose violated the insurer's duties under section 10-4-609, C.R.S.2008, and constituted common law fraud, negligent misrepresentation, and violations of other statutory duties of insurers to make full disclosure.
The trial court determined that all insurers do not necessarily have the same disclosure obligations. In a September 1, 2005 order applicable to all the plaintiffs before it, the trial court concluded that even though DeHerrera did not change the law, when an insurer charges "an additional premium for UM/UIM coverage for additional vehicles after DeHerrera" while including an OBNI exclusion, it does not satisfy its statutory requirement under section 10-4-609 to make full disclosure to the insured. However, in that order the trial court declined to address "other, different circumstances," such as when companies like ANPAC sell only multi-vehicle policies with an all-or-nothing UM/UIM election.
Due to variations in how the insurers offered and sold UM/UIM coverage, the trial court severed the cases. Briggs filed a Third Amended Class Action Complaint and Jury Demand containing five causes of action: fraudulent concealment, negligent misrepresentation by omission, bad faith, violation of the Colorado Consumer Protection Act (CCPA), and declaratory judgment.
In its summary judgment order in this case, the trial court incorporated summary judgment orders it issued in two of the other severed cases, which concluded that section 10-4-609 does not require insurers issuing multi-vehicle policies to offer separate UM/UIM coverage on each vehicle insured for liability. The trial court also found that as a matter of law the OBNI exclusion in ANPAC's policy, although invalid under DeHerrera, did not amount to a material nondisclosure or material misstatement because the effect of DeHerrera was that insureds received "greater coverage than the bargained-for coverage." Namely, they received UM/UIM coverage on any OBNI vehicles despite the OBNI exclusion. Therefore, the court concluded that the OBNI exclusion could not provide a basis for claims under section 10-4-609 or under any of the other theories *1185 advanced by Briggs. Accordingly, the court granted summary judgment in favor of ANPAC on all of Briggs's claims.

III. Standard of Review
We review de novo a trial court's grant of summary judgment. Lombard v. Colo. Outdoor Educ. Ctr., Inc., 187 P.3d 565, 570 (Colo. 2008). Summary judgment is appropriate when the pleadings and supporting documents clearly demonstrate that no issues of material fact exist and the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c). The moving party has the burden of establishing the nonexistence of a genuine issue, and the court must consider the facts in the light most favorable to the nonmoving party. Civil Serv. Comm'n v. Pinder, 812 P.2d 645, 649 (Colo.1991). "However, once the moving party makes a convincing showing that there are no genuine issues of material fact, the opposing party must demonstrate with relevant and specific facts that a real controversy exists." Sender v. Powell, 902 P.2d 947, 950 (Colo.App.1995). "In a summary judgment context, a material fact is a fact that will affect the outcome of the case." Id.

IV. Analysis
In another of the severed cases, a division of this court vacated the summary judgment entered in favor of the insurer, finding unresolved genuine issues of material fact, but affirmed portions of the trial court's order, including some issues raised in this appeal. See Wagner v. Travelers Prop. Cas. Co., 209 P.3d 1119, 2008 WL 4878387 (Colo.App. No. 07CA2112, Nov. 13, 2008).
We agree with the Wagner division and the trial court that neither the statute nor DeHerrera and Jaimes prohibit ANPAC from issuing only multi-vehicle, all-or-nothing UM/UIM coverage.
We also conclude, as in Wagner, that genuine issues of material fact remain as to whether ANPAC charged additional premiums for UM/UIM coverage on additional vehicles insured under its multi-vehicle policies. We reverse the trial court's contrary conclusion.
To the extent Wagner suggests that an OBNI exclusion is immaterial in the context of a multi-vehicle policy, we decline to follow it. We disagree with the trial court that ANPAC's continued inclusion of the OBNI exclusion after DeHerrera and Jaimes did not constitute a material nondisclosure or misrepresentation.
We determine further that an insurer that includes an OBNI exclusion in its policies fails to satisfy its disclosure obligations under section 10-4-609. But see Wagner, ___ P.3d at ___, 2008 WL 4878387 at *9 (holding that section 10-4-609 does not impose a duty on insurers to inform customers of the implications of DeHerrera). Therefore, we reverse the trial court's grant of summary judgment in favor of ANPAC based on its interpretation of this statute.
Finally, as in Wagner, we determine that this case must be remanded for further consideration of Briggs's claims that are based on theories other than violations of section 10-4-609.

A. Multi-Vehicle Policies
Briggs has not established he has a right, statutory or otherwise, to be offered UM/UIM insurance on a per vehicle basis. His citation to section 10-4-609(1), C.R.S. 2008, is unavailing. That statute provides:
No automobile liability or motor vehicle liability policy ... shall be delivered or issued for delivery in this state with respect to any motor vehicle licensed for highway use in this state unless coverage is provided ... for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles... except that the named insured may reject such coverage in writing.
(Emphasis added.)
Briggs contends that because insurance companies must offer UM/UIM coverage "with respect to any motor vehicle," this necessarily implies that customers have the right to decline the coverage offered with respect to each vehicle. However, "[f]orced, subtle, strained or unusual interpretation should never be resorted to where the language *1186 is plain, its meaning is clear, and no absurdity is involved." Harding v. Indus. Comm'n, 183 Colo. 52, 59, 515 P.2d 95, 98 (1973) (citing Lidke v. Indus. Comm'n, 159 Colo. 580, 413 P.2d 200 (1966)). Thus, we decline to infer from this statutory language a requirement that is not there. See Wagner, ___ P.3d at ___, 2008 WL 4878387 at *5 (concluding that neither the statute nor DeHerrera and Jaimes explicitly or implicitly prohibit insurers from issuing multi-vehicle insurance policies).

B. Whether ANPAC Charged Additional Premiums for UM/UIM Coverage on Additional Vehicles
Like the division in Wagner, we conclude that there are unresolved issues of material fact whether ANPAC charged additional premiums for UM/UIM coverage on additional vehicles on its multi-vehicle policies. On the one hand, ANPAC argues that it sold UM/UIM coverage only on entire policies and that the separate presentation of the premiums for UM/UIM insurance reflects the way ANPAC measured and allocated the UM/UIM risk exposure to determine how much to charge for UM/UIM coverage on the entire policy. See generally Wagner, ___ P.3d at ___, 2008 WL 4878387 at *8 (expert testimony regarding how insurers assess and allocate premiums). Because it sold UM/UIM coverage on a per policy basis, ANPAC argues that it could not have charged "additional" premiums.
On the other hand, the ANPAC declaration specifies that coverage will be provided only if a premium is indicated for each type of coverage and each vehicle on the policy. Briggs's policy lists a separate premium for each of his three insured vehicles alongside the line for UM/UIM coverage. And because the page totals the premiums for each vehicle, one could reasonably infer that ANPAC charges a separate, additional premium for UM/UIM coverage for each of Briggs's three insured vehicles. Also, the record contains internal memoranda indicating that ANPAC did not adjust its rates to reflect one premium for UM/UIM coverage for all vehicles on a policy until July 2004.
Thus, even though ANPAC sold only multi-vehicle policies, the record does not preclude the possibility that it charged additional premiums for UM/UIM coverage on additional vehicles. As a result, the record does not support the trial court's implicit finding, for summary judgment purposes, that ANPAC could not have charged additional premiums for UM/UIM coverage on additional vehicles simply because it issued only multi-vehicle policies. Therefore, we remand this case for further proceedings on this issue.

C. Materiality of the OBNI Exclusion
The trial court concluded that as a multi-vehicle policy insurer, ANPAC had no statutory or common law duty to disclose the invalidity of the OBNI exclusion in its policies. Such information was not material to ANPAC's insureds, reasoned the trial court, because under DeHerrera, they received greater coverage than that for which they had bargained. We disagree.
Undisclosed facts are "material" if the consumer's decision might have been different had the truth been disclosed. Morrison v. Goodspeed, 100 Colo. 470, 479, 68 P.2d 458, 463 (1937); see also Wade v. Olinger Life Ins. Co., 192 Colo. 401, 409 n. 7, 560 P.2d 446, 452 (1977) ("The Colorado Jury Instructions define `material fact' as one to which `a reasonably prudent person under the circumstances would attach importance ... in determining his [or her] course of action.' ... In the absence of authority to the contrary, the legal principles [articulated] in the instructions should be considered persuasive."). A plaintiff does not have the burden of proving that his or her decisions necessarily would have been different had the truth been disclosed. Ackmann v. Merchs. Mortgage & Trust Corp., 645 P.2d 7, 14 (Colo.1982). As stated in Ackmann, "[t]he test, therefore, of material inducement is not whether the plaintiff's action would, but whether it might, have been different if the misrepresentation had not been made." Id. (quoting William Williamson Kerr, Kerr on Fraud and Mistake 43-44 (4th ed.)).
We conclude that a reasonable fact finder could conclude that Briggs might have *1187 made different purchasing decisions had the invalid OBNI exclusion not been included in his policy. Briggs argues that he might have sought other options in the insurance marketplace, but because he was misinformed about the coverage he was getting from ANPAC, he did not have the opportunity to make an informed decision about how to purchase UM/UIM coverage. That is, he may have bought additional insurance which he did not need to purchase.
For example, had Briggs wanted to insure his second or third vehicle with a different insurer and still be fully insured, he would have thought he needed to purchase UM/UIM coverage from the other insurer, even though, unbeknownst to him, he already had UM/UIM coverage for Class One insureds under his ANPAC policy. In this way, the OBNI exclusion arguably distorted his perception of his options in the insurance marketplace and may have induced him to purchase more insurance from ANPAC than he otherwise might have purchased had the truth been disclosed. Thus, when the allegations are viewed in the light most favorable to Briggs, summary judgment was not proper.
Moreover, had Briggs been informed that the only benefit he received by paying UM/UIM premiums on multiple vehicles was that Class Two insureds received coverage, he could have made informed decisions about how to purchase the coverage he wanted. He might have purchased UM/UIM coverage on one car from an insurer that sells single vehicle UM/UIM coverage, and declined to buy UM/UIM coverage from ANPAC for any other cars insured by it, thereby saving the UM/UIM premiums charged by ANPAC. Conversely, he might have purchased liability and UM/UIM coverage on only one vehicle from ANPAC and insured his other vehicles with another insurer without purchasing additional UI/UIM coverage, thereby receiving identical coverage for his Class One insureds at a potentially lower cost.
We cannot conclude that ANPAC's continued use of the OBNI exclusion after the DeHerrera and Jaimes decisions was not material as a matter of law, and that it did not damage Briggs and ANPAC's other insureds. Therefore, we reverse the conclusion of the trial court on this issue.
Although we conclude that the continued use of the OBNI exclusion may have been misleading, we do not conclude that ANPAC had a duty to advise its insureds about the insurance that might have been available from its competitors in the marketplace. We conclude merely that ANPAC violates its duty of honest disclosure if it provides misleading or incomplete information that may discourage its policyholders from seeking competitive alternatives.

D. Insurers' Section 10-4-609 Disclosure Duties
The trial court concluded that section 10-4-609 does not require insurers selling UM/UIM coverage solely on multi-vehicle policies to inform their customers about the invalidity of the OBNI exclusion. Accordingly, it also concluded that ANPAC fulfilled its statutory duty under section 10-4-609 to disclose sufficient accurate information about the UM/UIM coverage it offered. Based on our conclusions that leaving the OBNI exclusion in its policies after DeHerrera could be materially misleading, we disagree.
Section 10-4-609(2), C.R.S.2008, provides: "[T]he insurer shall offer the named insured the right to obtain uninsured motorist coverage in an amount equal to the insured's bodily injury liability limits...." In Allstate Insurance Co. v. Parfrey, 830 P.2d 905, 912 (Colo.1992), the court held that the purpose of this section is "to provide a member of the driving public with an opportunity to make an informed decision on an appropriate level of UM/UIM coverage." (Emphasis added.) To determine whether an insurer has fulfilled this duty, a court may consider
the clarity with which the purpose of UM/UIM coverage was explained to the insured, whether the explanation was made orally or in writing, the specificity of the options made known to the insured, the price at which the different levels of UM/UIM coverage could be purchased, and any other circumstances bearing on the *1188 adequacy and clarity of the notification and offer.
Id. at 913.
The Parfrey court held that although section 10-4-609 creates a one-time duty to notify an insured of the nature and purpose of UM/UIM coverage, "[i]f the insurer fails to discharge its duty prior to the issuance of the policy, the duty continues and can be discharged only by an adequate notification and offer on some future occasion." Id. at 912; see also Jones v. USAA Cas. Ins. Co., 952 P.2d 819, 822 (Colo.App.1997) ("Public policy favors protecting insurance consumers by requiring insurers to disclose fully and fairly to insureds what insurance protection is actually being provided for the premium charged.").
We hold that if an insurance company has offered its customers the option to purchase UM/UIM coverage on all their vehicles with sufficient accurate information, it has satisfied its obligation under this statute. Cf. Wagner, ___ P.3d at ___, 2008 WL 4878387 at *9 (concluding that an insurer complies with section 10-4-609 merely by informing its insureds about the availability of the coverage, as required by 10-4-609(1), and advising them about their options to increase policy limits, as required by section 10-4-609(2)). However, because we conclude that ANPAC's continued use of the OBNI exclusion could have been materially misleading, we further determine that Briggs might not have had the opportunity to make an informed decision about whether and how to purchase such coverage as required by section 10-4-609 and Parfrey. Thus, we reverse the trial court's ruling on this issue.

E. Other Bases for Insurers' Disclosure Duties
The trial court relied on its determination that the invalidity of the OBNI exclusion was immaterial and that the ANPAC insureds "received more than they bargained for" to support its grant of summary judgment on Briggs's common law and other statutory claims. The trial court determined that the fraudulent concealment claim failed because ANPAC did not conceal a material fact that should have been disclosed and that the negligent misrepresentation claim failed because Briggs was not damaged by receiving "extra" coverage on OBNI vehicles. It concluded that the bad faith and CCPA claims failed because ANPAC's conduct was permissible and, therefore, not unreasonable, unfair, or deceptive. Finally, because Briggs had not prevailed on any of his other causes of action, the trial court denied his declaratory judgment claim and entered summary judgment in favor of ANPAC.
Because we conclude that a genuine issue exists as to whether the information ANPAC failed to disclose was material, summary judgment on these other claims as well was improper. Therefore, we reverse the summary judgment on all the claims and remand these causes of action for further proceedings.
The judgment is reversed, and the case is remanded for further proceedings as directed.
Judge LICHTENSTEIN and Judge STERNBERG[*] concur.
NOTES
[*] Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S.2008.