Stacy **MULLEN, individually and on behalf of all others similarly situated, Plaintiff–Appellant,**

v.

**ALLSTATE INSURANCE COMPANY, Defendant–Appellee.**

No. 08CA1039.

Colorado Court of Appeals, Div. VI.

Sept. 3, 2009.

Hill & Robbins, P.C., Robert F. Hill, John H. Evans, Jr., Nathan P. Flynn, Denver, Colorado; McFarland Law Offices, Thomas D. McFarland, Zachary C. McFarland, Golden, Colorado; Evans & McFarland, LLC, M. Gabriel McFarland, Luke McFarland, Golden, Colorado, for Plaintiff–Appellant.

Wheeler Trigg Kennedy LLP, John M. Vaught, Terence M. Ridley, Sean D. Baker, Denver, Colorado; Meckler Bulger Tilson Marick & Pearson LLP, Peter J. Valeta, Chicago, Illinois, for Defendant–Appellee.

Opinion by Judge FURMAN.

In this automobile insurance action, plaintiff, Stacy Mullen, individually and on behalf of all others similarly situated, appeals the summary judgment in favor of Allstate Insurance Company. We affirm.

## I. Introduction

Each year since 1998, Mullen purchased from Allstate a multi-vehicle insurance policy, including uninsured/underinsured motorist (UM/UIM) coverage for all listed vehicles. The policy provided UM/UIM coverage for named insureds and resident relatives (class one insureds) and for nonresident relatives, guest passengers, and permissive users (class two insureds), regardless of the vehicle occupied.

Allstate utilized a "two-tier" premium structure for UM/UIM coverage, meaning that a certain UM/UIM premium was charged if one vehicle was insured, and a higher single premium was charged if multiple vehicles were insured, regardless of the number of vehicles.

Mullen had the option to purchase or decline the UM/UIM coverage on all of the vehicles she insured with Allstate, but did not have the option to purchase separate UM/UIM coverage on particular vehicles. Her policy provided $100,000/$300,000 UM/UIM coverage for all persons insured under the policy.

Mullen and other insurance policyholders filed a class action against a number of insurance companies, including Allstate, alleging that each insurance company had a duty to advise them of the effect of *DeHerrera v. Sentry Insurance Co.*, 30 P.3d 167 (Colo. 2001), that UM/UIM coverage "follows" the insured, and, as a result of *DeHerrera,* they had received no benefit from the premiums paid for UM/UIM coverage on more than one vehicle. *See also Jaimes v. State Farm Mut. Auto. Ins. Co.*, 53 P.3d 743 (Colo.App.2002). The class claims included a general allegation that the coverage sold by the insurance companies was illusory.

The district court severed the cases after it determined that variations in how insurers offered and sold UM/UIM coverage precluded one class action, because some insurance companies sold separate policies for each vehicle, thereby providing the insureds differ-

ent options to purchase UM/UIM insurance. *See, e.g., Briggs v. Am. Nat'l Prop. & Cas. Co.,* 209 P.3d 1181, 1183 (Colo.App.2009) ("For example, an insured might purchase UM/UIM coverage on a single vehicle, which would nonetheless, by operation of law, provide UM/UIM coverage for Class One insureds in any vehicle, and Class Two insureds in that single vehicle only.").

After severance, Mullen filed a third amended complaint alleging five claims for relief: (1) fraudulent concealment; (2) negligent misrepresentation by omission; (3) bad faith; (4) violation of the Colorado Consumer Protection Act (CCPA); and (5) declaratory judgment that the purchase of additional UM/UIM insurance coverage was illusory. The essence of Mullen's claims, according to the district court, was that "Allstate failed to disclose the scope of UM/UIM coverage" by not disclosing that

> (i) other insurance companies sell single vehicle policies; (ii) the insured could purchase UM/UIM coverage for one vehicle from the multi-vehicle policy seller and obtain UM/UIM coverage for the insured and resident relatives in any vehicle; (iii) [the insured could] then purchase liability coverage for an additional vehicle from a single vehicle policy seller and decline to purchase ... UM/UIM coverage on the additional vehicle.

Mullen sought compensatory damages in an amount equal to the excess premiums, exemplary damages, and an order enjoining Allstate from engaging in the practices described in the complaint.

Allstate moved for summary judgment on all of Mullen's claims. It submitted affidavits from three Allstate employees that described language in the policy forms and identified the premiums charged. The affidavits also stated that Allstate's premium rates for UM/UIM coverage had been "set and charged in accordance with the rate filings with the Colorado Division of Insurance (DOI)," and justified those rates according to the risk of loss.

Mullen did not file responding affidavits or contradict Allstate's affidavits and documentary evidence. The district court granted Allstate's motion, finding, in pertinent part:

> [I]nsurance companies have a duty to disclose sufficient accurate information about the coverage [they sell] to permit an insured to make an informed decision concerning the purchase of UM/UIM coverage; however, that duty does not extend to advising insureds about competitor business practices and alternative coverage options that may be found in the insurance marketplace.

> Plaintiffs also maintain that Allstate did not disclose to insureds what, if any, additional benefit was provided by the additional UM/UIM premiums paid. However, the information provided was accurate information regarding the benefit obtained for the additional premiums—the policy clearly states that purchase of UM/UIM coverage provides UM/UIM coverage for all class one and class two persons in all vehicles.... An offer that includes information about the additional benefits is sufficient, and the additional benefits do not need to be specifically identified as "additional benefits."

On appeal, Mullen challenges the district court's grant of summary judgment in favor of Allstate.

## II. Summary Judgment

Appellate review of summary judgment is de novo. *Struble v. Am. Family Ins. Co.,* 172 P.3d 950, 954 (Colo.App.2007).

Summary judgment is appropriate when the pleadings and supporting documents demonstrate that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c). A material fact is one that will affect the outcome of the case. *Struble,* 172 P.3d at 954–55. When the pleadings and affidavits show material facts are in dispute, it is error to grant summary judgment. The facts must be viewed in the light most favorable to the nonmovant. *Id.*

Mullen contends material issues of fact are in dispute that preclude summary judgment because (1) the Allstate policy was misleading; and (2) Allstate's multi-vehicle policy contravened public policy. Mullen also claims that granting summary judgment

usurped her right to have a jury determine the "materiality of undisclosed facts" in her additional claims for relief. We address and reject her contentions in turn.

### A. Information About the Scope of UM/UIM Coverage

■ Mullen contends the Allstate policy was misleading because it did not provide sufficient information for customers to make an informed decision about the purchase of UM/UIM insurance. We disagree.

■ Section 10–4–609 (1)(a), C.R.S.2008, provides that insurers must give their customers an option to purchase UM/UIM coverage "for the protection of persons." The legislative purpose of this statute "is to provide a member of the driving public with an opportunity to make an informed decision on an appropriate level of UM/UIM coverage." *Allstate Ins. Co. v. Parfrey*, 830 P.2d 905, 912 (Colo.1992). The insurer has a one-time duty to notify the insured of the nature and purpose of UM/UIM coverage and to offer UM/UIM insurance in a manner reasonably calculated to permit the potential purchaser to make an informed decision. *Id.* at 912–13.

■ When one vehicle is insured in a single-vehicle policy, the UM/UIM coverage applies to the insured person who is injured "irrespective of the vehicle the injured insured occupies at the time of the injury." *DeHerrera*, 30 P.3d at 176; *see also Bernal v. Lumbermens Mut. Cas. Co.*, 97 P.3d 197, 202–03 (Colo.App.2003)(insurer-initiated vehicle limitation for UM/UIM coverage was against public policy).

Following *DeHerrera*, a division of this court held that an owned but not insured clause (OBNI exclusion) in an insurance policy, which purported to exclude UM/UIM coverage while an insured person was traveling in a vehicle not actually covered under the policy, was void as against public policy because section 10–4–609 requires insurers to provide UM/UIM benefits regardless of the vehicle a person occupied when injured by an uninsured or underinsured motorist. *Jaimes*, 53 P.3d at 743.

In *Wagner v. Travelers Property Casualty Co.*, 209 P.3d 1119 (Colo.App.2008), another division of this court first addressed one of the twenty-seven severed cases similar to this one. The division held that, under Travelers' UM/UIM policy, which included a declarations page delineating the per-vehicle cost for the purchase of UM/UIM insurance and an OBNI exclusion, there was a genuine issue of material fact as to whether Travelers misled its insured by requiring him to purchase UM/UIM coverage on all of his owned vehicles in order to have coverage on any of them. Accordingly, the division reversed the summary judgment in favor of Travelers. *Id.* at 1127.

The *Wagner* division concluded that "*DeHerrera* clearly shifted the coverage analysis from the vehicle insured to the person insured" and "carrying UM/UIM coverages on multiple vehicles may well be unnecessary in the multi-vehicle policy." *Id.* at 1126. It also held, however, that "neither *DeHerrera*, *Jaimes*, nor the statute explicitly or implicitly prohibit[s] [the insurer] from issuing multi-vehicle insurance policies." *Id.* at 1125.

In *Briggs*, the division reached a similar conclusion. The division held that a multi-vehicle policy, which included a declarations page delineating the per-vehicle cost for the purchase of UM/UIM insurance and an OBNI exclusion, rendered summary judgment inappropriate on claims identical to those presented here. The *Briggs* division also agreed with the *Wagner* division that "neither the [UM/UIM] statute, nor *DeHerrera* and *Jaimes* prohibit [an insurer] from issuing only multi-vehicle, all-or-nothing UM/UIM coverage." 209 P.3d at 1185.

We recognize there are a number of unpublished opinions that follow the reasoning in *Wagner* and *Briggs*. However, unlike the present case, the policies at issue in those cases contained an OBNI exclusion or listed additional vehicles separately.

Therefore, we conclude there was no disputed issue of fact, and the Allstate policy was not misleading, because it (1) does not list a separate UM/UIM premium for each of Mullen's insured vehicles; (2) includes a total premium section specifically for UM/UIM insurance that provides coverage for class one insureds and class two insureds; (3) contains

a declaration page identified as "Additional Coverage"; and (4) shows a single charge for the entire policy regardless of the number of vehicles covered.

Moreover, the Allstate policy does not contain an OBNI exclusion, which was identified as problematic in *Briggs.* *Id.* at 1186–87.

■ Nevertheless, Mullen contends that Allstate's use of a two-tiered rate structure for UM/UIM coverage is evidence the Allstate policy provides UM/UIM coverage on a per-vehicle UM/UIM basis rather than a per-policy basis. We disagree.

Allstate's motion for summary judgment included an affidavit from an actuary, which was undisputed by Mullen, stating, "[i]f one or more additional vehicles are listed on a policy, there is an additional risk of loss associated with the additional vehicles because multiple vehicles could be in use and thereby exposed to potential accidents with uninsured and/or underinsured motorists at the same time."

Further, Allstate's affidavit states that the premium it charges on multi-vehicle policies is not a function of multiplying the single-vehicle rate by the number of vehicles covered under the policy. Rather, the increase in UM/UIM premium for multi-vehicle policies is less than the single-vehicle rate because the additional vehicles are anticipated to be used less than a single vehicle and, therefore, the additional risk would be less.

Allstate's affidavit further explains that it calculates its UM/UIM premium amounts by using historical UM/UIM loss experience and cost projections for the upcoming year to predict the aggregate expected total loss, and then it allocates this aggregate total loss among all of its Colorado insureds, so that the total aggregate amount of UM/UIM premium to be collected remains the same.

Thus, because there were no disputed issues of material fact, we conclude the trial court did not err in granting summary judgment.

## B. Allstate's Multi–Vehicle Policy

Mullen also appears to be arguing on appeal that a multi-vehicle policy with all or nothing UM/UIM coverage contravenes public policy. However, the district court found that Mullen did not "assert here that Allstate, as a matter of law, has a duty to offer UM/UIM coverage on a per vehicle basis." Therefore, the argument was not before the district court, and is not before us on appeal. *See Comm. for Better Health Care for All Colorado Citizens v. Meyer,* 830 P.2d 884, 888 (Colo.1992) (appellate court may only consider issues that have actually been determined by another court or agency, and have been properly presented for consideration). Accordingly, we will not consider this argument.

## C. The Five Claims for Relief

Mullen also contends the district court erred in granting summary judgment in favor of Allstate because, in so doing, it usurped her right to have a jury determine the "materiality of undisputed facts" in her claims for relief. Because each of her claims may be determined as a matter of law, we disagree.

### 1. Fraudulent Concealment

■ Mullen contends the district court erred in granting summary judgment in favor of Allstate because Allstate did not inform consumers that the purchase of UM/UIM coverage for one vehicle resulted in full UM/UIM coverage for persons insured under the policy. We disagree.

■ The elements of fraudulent concealment are

(1) concealment of a material fact that in equity and good conscience should be disclosed; (2) knowledge on the part of the party against whom the claim is asserted that such a fact is being concealed; (3) ignorance of that fact on the part of the one from whom the fact is concealed; (4) the intention that the concealment be acted upon; and (5) action on the concealment resulting in damages.

*Nielson v. Scott,* 53 P.3d 777, 779 (Colo.App. 2002).

The district court found (1) Allstate was not required to inform consumers that per-vehicle coverage was available from other

insurance companies; and (2) the undisputed facts showed that UM/UIM coverage on additional vehicles did provide a benefit, namely coverage for class two insureds in all vehicles listed on the policy. Thus, the district court found that Allstate did not conceal a material fact that in equity and good conscience should have been disclosed.

We agree that Allstate was not required to inform consumers that per-vehicle coverage was available from other insurance companies. *See Briggs,* 209 P.3d at 1187. Moreover, as the district court noted, Mullen and the other insureds received the benefit of UM/UIM coverage under their Allstate policy for class two insureds both before and after *DeHerrera* and *Jaimes.*

To the extent *Wagner* and *Briggs* can be read to imply that coverage for class two insureds in all vehicles is not a benefit to consumers, we disagree. *See generally Farmers Ins. Exchange v. Benzing,* 206 P.3d 812, 817 (Colo.2009). Providing class two insureds with UM/UIM coverage in all insured vehicles is, in our view, a benefit, because it allows those persons to recover under the policy when they are injured by uninsured or underinsured motorists. Further discussion about whether that benefit was worth the premium paid for it becomes an insurance rate issue that would be precluded from our consideration under the filed rate doctrine. *See Horwitz v. Bankers Life & Cas. Co.,* 319 Ill.App.3d 390, 396, 253 Ill. Dec. 468, 745 N.E.2d 591, 596 (2001)(applying Colorado law, court granted summary judgment for insurer where the insurance company filed its rates with the DOI).

Given that Allstate was not required to provide information regarding the business practices of other insurance companies and that Mullen received the benefit of coverage for class two insureds in any vehicle, we conclude as a matter of law that Allstate did not conceal a material fact. Hence, the trial court did not err in granting summary judgment on that claim.

### 2. Negligent Misrepresentation by Omission

■ Mullen also contends the district court erred in granting summary judgment in favor of Allstate because Allstate committed negligent misrepresentation by omission by failing to disclose that the purchase of UM/UIM coverage on additional vehicles provided little or no additional benefit to insureds. We disagree.

■ Negligent misrepresentation occurs when one who,

in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Fluid Tech., Inc. v. CVJ Axles, Inc.,* 964 P.2d 614, 616 (Colo.App.1998)(quoting Restatement (Second) of Torts § 552(1) (1976)).

Because Allstate was not obligated to provide information about other types of coverage, its policy did not include an OBNI exclusion, and its UM/UIM coverage on additional vehicles provided an additional benefit by insuring class two insureds, the district court correctly determined that Allstate did not commit negligent misrepresentation by omission. Hence, the district court did not err in granting summary judgment on that claim.

### 3. Bad Faith

■ Mullen also contends Allstate violated its statutory duty to act in good faith where it failed to inform its insureds that UM/UIM coverage was necessary on only one vehicle to cover class one insureds. We disagree.

■ An insurer has an obligation to act in good faith and to abstain from deceptive or misleading practices. § 10–1–101, C.R.S.2008. An insurer has a duty of good faith and fair dealing, formed by the nature of the relationship created by the insurance contract. *Ballow v. PHICO Ins. Co.,* 875 P.2d 1354, 1363 (Colo.1993). Making a statement that misrepresents the benefits, advantages, conditions, or terms of an insurance policy is an unfair or deceptive trade practice. § 10–3–1104(1)(a)(I), C.R.S.2008.

We conclude the undisputed facts establish Allstate did not engage in bad faith. The Allstate policy informed customers that purchase of UM/UIM coverage provided UM/UIM coverage for all class one and class two insureds in all vehicles. We agree with the district court that an offer that includes accurate information about the additional benefits provided, that is, insurance of class two insureds, is sufficient, and those benefits do not need to be specifically identified as additional benefits. Therefore, we conclude Allstate did not fail in its obligation to act in good faith. Accordingly, the district court did not err in granting summary judgment on this basis.

Finally, we have concluded Allstate's practices complied with Colorado law. *See* § 10-4-609. Therefore, its practices were not unreasonable as a matter of law. *See Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1274 (Colo. 1985).

### 4. Violation of the CCPA

 Mullen also contends Allstate violated the CCPA by failing to inform her and the class members of the fact that "the purchase of UM/UIM coverage for one vehicle resulted in full UM/UIM coverage for the persons insured under the policy and that purchasing UM/UIM coverage on more than one vehicle did not provide the persons insured with any additional UM/UIM coverage." We disagree.

Although Mullen's opening brief in this court cites section 6-1-105(1)(e), C.R.S.2008, her complaint cites section 6-1-105(1)(u), C.R.S.2008. Therefore, we will limit our analysis to the claim she submitted to the district court.

Section 6-1-105(1)(u) provides that a person engages in a deceptive trade practice when he or she "[f]ails to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction."

There is no material information Allstate failed to disclose. Allstate issues a single policy that—consistent with its filed rates expressly approved by DOI—provides UM/UIM coverage for all persons insured under that policy.

### 5. Declaratory Judgment

Mullen last requests declaratory judgment that the purchase of UM/UIM for additional vehicles resulted in illusory coverage. However, as noted, the purchase of UM/UIM coverage for more than one vehicle resulted in coverage for all class two persons in all insured vehicles. Therefore, Mullen received a benefit, and the additional coverage was not illusory. Hence, we conclude the district court did not err in rejecting this request.

The judgment is affirmed.

Judge LOEB and Judge BOORAS concur.