Gilbert BARFIELD, Plaintiff–Appellant,

v.

HALL REALTY, INC., a Colorado corporation, Defendant–Appellee.

No. 09CA0763.

Colorado Court of Appeals, Div. V.

April 1, 2010.

Bratton Hill Wilderson & Lock, LLC, Rufus O. Wilderson, Gunnison, Colorado, for Plaintiff–Appellant.

Elder & Phillips, P.C., Keith Boughton, Ryan H. McGuirk, Grand Junction, Colorado, for Defendant–Appellee.

Opinion by Judge GRAHAM.

In this case concerning representations by a transaction real estate broker in connection with the sale of resort property, the buyer, Gilbert Barfield, appeals the trial court's entry of summary judgment in favor of defendant, Hall Realty, Inc. We affirm.

## I. Background

The following facts are either alleged in Barfield's complaint or are not in dispute. Hall Realty executed a form approved by the Real Estate Commission whereby it agreed to act as the transaction broker in connection with the sale of property in Gunnison County known as the Lake Fork Resort (the resort) owned by Daniel W. Weddel, Sr. (the seller). Hall Realty represented on the multiple listing service (MLS) and in an advertising brochure that the resort was a "turn-key business opportunity" for the operation of, among other things, a twelve-site RV park. In May 2005, Barfield purchased the resort, which at the time was operating as an RV park with twelve RV sites. The resort also included six cabins, a home, office space, and a grocery store.

In 2007, the Colorado Department of Public Health and Environment (CDPHE) informed Barfield that the water supply system to the resort was not properly permitted to allow the resort to be operated as a twelve-site RV park. In 2008, Gunnison County (the County) informed Barfield that the resort was not permitted for use as an RV park and that such use was in violation of the Gunnison County Land Use Resolution and must cease and desist. The CDPHE and the County also informed Barfield that the sewage disposal system for the resort was not properly permitted to allow it to be operated as a twelve-site RV park.

Barfield brought an action against Hall Realty for (1) negligent misrepresentation, alleging that Hall Realty "failed to act reasonably in ascertaining the accuracy" of its representation that the resort was a "turn-key business opportunity" for the operation of a twelve-site RV park; (2) fraudulent representation, alleging that Hall Realty's representation of the resort as a "turn-key business opportunity" for the operation of a twelve-site RV park was made either with knowledge on the part of Hall Realty that it was false or with utter indifference to its truth or falsity; and (3) fraudulent concealment, alleging that Hall Realty failed to disclose that the seller had never received proper permits from either the County or CDPHE to operate the resort as a twelve-site RV park and that Hall Realty was either aware of the nonexistence of such permits or acted with utter indifference thereto.

Hall Realty filed a motion for summary judgment, arguing that, because it acted as a transaction broker, pursuant to section 12–61–807, C.R.S.2009, of "An Act Concerning

Brokerage Relationships in Real Estate Transactions," codified at sections 12–61–801 to –811, C.R.S.2009 (the Act), it had no duty to investigate or verify that the resort was a "turn-key business opportunity" for the operation of a twelve-site RV park.

In its reply brief in support of its summary judgment motion, Hall Realty asserted that "the transactional broker's duty ended by describing the opportunity as it appeared to be when listed: an [ongoing] 'turn-key' business opportunity." Hall Realty attached the affidavit of its broker who listed the resort on the MLS and created the advertising brochure. The broker averred, in relevant part:

6. On October 4, 2004, I placed information about the property and business opportunity into the [MLS]. The property was listed as "commercial." The price listed was $695,000 and the property was described in part as "business, inventory, equipment, furniture, fixtures." In the section entitled Public Remarks the property was described as a resort situated on 36 acres bordering the Curecanti National Recreation Area overlooking Blue Mesa Reservoir. The property had 12 RV sites and 6 log sided cabins together with a home, office space and grocery store. It was described in the [MLS] as a "turn-key business opportunity!" . . . .

7. I also created a two-sided advertising brochure on Hall Realty, Inc. letterhead with a color picture of the "Lake Forest Resort." In that advertising brochure, the property offered for sale was again described as a "turn-key business opportunity!" The property had 12 RV sites, 6 log sided cabins, a home, office area and a grocery store. . . . The photograph contained in Exhibit C indicates that the property was an ongoing business at the time it was listed for sale.

. . . .

10. At no time did I fabricate [that] the business offered for sale was anything other than what it was. It was an ongoing business and the books were available for inspection by [Barfield]. It was anticipated a buyer could step in as the owner and continue to run the business. That is why

it was characterized as a "turn-key business opportunity."

The photographs of the resort attached to the affidavit show that it was operating as a twelve-site RV park when Hall Realty listed it for sale.

The trial court concluded that under the Act, Barfield's claims against Hall Realty must be dismissed. Specifically, the court determined that the "legislative intent [of the Act] was to limit the duty of transaction brokers" and that the affidavit of Hall Realty's broker made "clear that she had no actual knowledge of the permit issues and no reason to think anything other than that this was an operating business" and, therefore, the use of the phrase "turn-key business" was not actionable under the circumstances. The court noted that there was no affidavit from Barfield to the contrary.

This appeal followed.

## II. Standard of Review

We review de novo a trial court's grant of summary judgment. *Lombard v. Colo. Outdoor Educ. Ctr., Inc.*, 187 P.3d 565, 570 (Colo. 2008). Summary judgment is appropriate when the pleadings and supporting documents clearly demonstrate that no issues of material fact exist and the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c). The moving party has the burden of establishing the nonexistence of a genuine issue, and the court must consider the facts in the light most favorable to the nonmoving party. *Lombard*, 187 P.3d at 570. "However, once the moving party makes a convincing showing that there are no genuine issues of material fact, the opposing party must demonstrate with relevant and specific facts that a real controversy exists." *Sender v. Powell*, 902 P.2d 947, 950 (Colo.App.1995). "In a summary judgment context, a material fact is a fact that will affect the outcome of the case." *Id.*

We also review a trial court's interpretation of a statute de novo because it presents a question of law. *State ex rel. Salazar v. Cash Now Store, Inc.*, 31 P.3d 161, 164 (Colo. 2001).

■ Initially, we reject Barfield's argument that the trial court improperly considered the broker's affidavit attached to Hall Realty's reply brief in support of its summary judgment motion, precluding him from having an opportunity to respond. Neither the affidavit nor the reply brief raised a new issue as to which Barfield was not put on notice of the need to present evidence. *Cf. Wallman v. Kelley*, 976 P.2d 330, 332 (Colo. App.1998). Nor are we convinced that the affidavit contradicts the allegations of the complaint. The complaint pleads in the alternative and purports to state a cause of action even if Hall Realty did not actually know of the falsity of the representation. Thus, statements to the effect that the broker did not fabricate anything about the resort did not contravene the allegations of the complaint and did not interject the issue of whether Hall Realty breached a duty. Furthermore, the affidavit did not introduce a new issue about the actual falsity of the characterization of the resort as a "turn-key business opportunity," because the trial court's ruling assumed only that the broker did not have actual knowledge of the permit issues and no reason to think that the resort was used for anything other than an operating business.

### III. Analysis

Barfield contends that the trial court erred in concluding that section 12–61–807 warranted dismissal of his claims. We disagree.

### A. Negligent Misrepresentation and Fraudulent Representation

■ Barfield argues that Hall Realty's representation of the resort as a "turn-key business opportunity" for the operation of a twelve-site RV park, without conducting even a "modicum of investigation" to confirm this representation, constituted negligent misrepresentation and fraudulent representation. We disagree.

■ Negligent misrepresentation occurs when one who,

in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others

in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Mullen v. Allstate Ins. Co.*, 232 P.3d 168, 174, 2009 WL 2782224 (Colo.App.2009); *accord Fluid Tech., Inc. v. CVJ Axles, Inc.*, 964 P.2d 614, 616 (Colo.App.1998) (quoting Restatement (Second) of Torts § 552(1) (1976)); *see also* CJI–Civ. 4th 9:4 (1998).

■ To establish fraud, a plaintiff has to prove that (1) a fraudulent misrepresentation of material fact was made by the defendant; (2) at the time the representation was made, the defendant knew the representation was false or was aware that he did not know whether the representation was true or false; (3) the plaintiff relied on the misrepresentation; (4) the plaintiff had the right to rely on, or was justified in relying on, the misrepresentation; and (5) the reliance resulted in damages. CJI–Civ. 4th 19:1 (1998); *see also M.D.C./Wood, Inc. v. Mortimer*, 866 P.2d 1380, 1382 (Colo.1994); *Zimmerman v. Loose*, 162 Colo. 80, 88, 425 P.2d 803, 807 (1967); *Morrison v. Goodspeed*, 100 Colo. 470, 477–78, 68 P.2d 458, 462 (1937).

Here, it is undisputed that when Hall Realty listed the resort for sale, it was operating as an RV park consisting of twelve RV sites, six cabins, a home, an office, and a grocery store. It is also undisputed that Hall Realty did not actually know that the resort was not properly permitted to operate as a twelve-site RV park under state and county regulations. Therefore, the evidence demonstrates that Hall Realty had no reason to believe that the resort was anything but an ongoing, operational RV park.

Although Barfield argues that Hall Realty's statement alone creates a duty because it was false and that he is not challenging Hall Realty's failure to investigate the permitting issues, the crux of his argument on appeal is exactly that—namely, that Hall Realty should have discovered the permitting issues and its failure to do so violated its duty to exercise reasonable skill and care required of a transaction broker pursuant to section 12–

61–807(2)(b), C.R.S.2009. We are not persuaded.

The Act defines the particular legal duties owed by real estate brokers acting in various capacities and clarifies the relationships between real estate professionals and the public. In a significant departure from the traditional common law view of agency relationships in real estate transactions, the Act recognized a nonagent real estate professional, the transaction broker. *Hoff & Leigh, Inc. v. Byler*, 62 P.3d 1077, 1078 (Colo.App.2002); *see also Sussman v. Stoner*, 143 F.Supp.2d 1232, 1237 (D.Colo.2001).

A transaction broker is "a broker who assists one or more parties throughout a contemplated real estate transaction with communication, interposition, advisement, negotiation, contract terms, and the closing of [the] transaction without being an agent or advocate for the interests of any party to such transaction." § 12–61–802(6), C.R.S. 2009; *see also* § 12–61–807(1), C.R.S.2009 ("A broker engaged as a transaction-broker is not an agent for either party.").

■ While a real estate broker acting as an agent owes fiduciary duties to his or her principal, *see Moore & Co. v. T–A–L–L, Inc.*, 792 P.2d 794, 798–99 (Colo.1990), a transaction broker is not in a fiduciary relationship with either party to a real estate transaction. *See* § 12–61–802(6); *Hoff & Leigh, Inc.*, 62 P.3d at 1078.

Nevertheless, a transaction broker has certain statutory obligations and responsibilities. He or she must "perform the terms of any written or oral agreement made with any party to the transaction" and must "exercise reasonable skill and care as a transaction-broker" in performing certain enumerated duties. § 12–61–807(2), C.R.S.2009. These duties include, but are not limited to:

> Disclosing to all prospective buyers ... any adverse material facts *actually known* by the broker including but not limited to adverse material facts pertaining to the title, the physical condition of the property, any defects in the property, and any environmental hazards affecting the property required by law to be disclosed.

§ 12–61–807(2)(b)(VI), C.R.S.2009 (emphasis added).

However, the transaction broker is under no duty "to conduct an independent inspection of the property for the benefit of the buyer ... and has no duty to independently verify the accuracy or completeness of statements made by the seller ... or independent inspectors." § 12–61–807(4), C.R.S.2009. Nor is there any "imputation of knowledge or information between any party and the transaction-broker or among persons within an entity engaged as a transaction-broker." § 12–61–807(7), C.R.S.2009.

We conclude that pursuant to the plain language of section 12–61–807, Hall Realty had no duty as a matter of law to conduct an investigation of the resort to verify that it could in fact operate as a twelve-site RV park under state and county regulations. Such a requirement would be in conflict with the plain terms of the Act. *See Moody v. Corsentino*, 843 P.2d 1355, 1370 (Colo.1993) (we rely on the language of the statute, giving words and phrases their plain and ordinary meaning). The statute clearly states that a transaction broker is under no duty "to conduct an independent inspection of the property for the benefit of the buyer ... and has no duty to independently verify the accuracy or completeness of statements made by the seller ... or independent inspectors." § 12–61–807(4). Moreover, even if the seller was aware of the resort's permitting issues, the seller's knowledge could not be imputed to Hall Realty. *See* § 12–61–807(7).

Barfield, in effect, argues that the statute requires the transaction broker to give an advantage to buyers over sellers. Doing so would require the transaction broker to independently investigate the property for the benefit of the buyer. Such a duty would effectively remove the transaction broker from its role as intermediary and put it in the position of advocate for the buyer. By statute, such advocacy is reserved for the buyer's agent, who is required "[t]o promote the interests of the buyer ... with the utmost good faith, loyalty, and fidelity." § 12–61–805(1)(c), C.R.S.2009. Imposing this same duty on the transaction broker would not only duplicate the duty of the buyer's

agent, but also undermine the stated purpose of the transaction broker role. The Act specifically states that the transaction broker is not an agent for either party, *see* § 12–61–807(1), nor an *"advocate* for the interests of any party to [the] transaction." § 12–61–802(6) (emphasis added). Such a construction is antithetical to the statute. *See Brock v. Nyland,* 955 P.2d 1037, 1040 (Colo.1998) (we must give effect to the spirit and intent of the General Assembly in enacting the statute), *overruled on other grounds by Finnie v. Jefferson County Sch. Dist. R–1,* 79 P.3d 1253 (Colo.2003); *AviComm, Inc. v. Colorado Pub. Utils. Comm'n,* 955 P.2d 1023, 1031 (Colo.1998) (a statutory interpretation that defeats the legislative intent or leads to an absurd result will not be followed).

■ Although transaction brokers have a duty to make accurate statements when advertising property for sale and cannot insulate themselves under section 12–61–807 from liability for making statements that they actually know are false or are not supported by the facts, Barfield's argument goes beyond this. Barfield argues that the duty to investigate arises because Hall Realty made a statement that the resort was a "turn-key business opportunity" for the operation of a twelve-site RV park. However, the facts are undisputed that when Hall Realty made this statement the resort was in fact operating as an RV park with twelve RV sites and a store. These undisputed facts, coupled with section 12–61–807(4)'s clear directive that a transaction broker has no duty to investigate, do not support Barfield's claims that Hall Realty's statement was made negligently or fraudulently. Barfield's claims can only arise in the context of Hall Realty's failure to discover that the property was not authorized for water taps for all the sites. Requiring such an investigation goes far beyond the description that the property was a "turn-key business" and would require the type of investigation that is unnecessary under the statute.

Consequently, because transaction brokers have no duty to conduct an independent inspection of the property for the benefit of the buyer pursuant to section 12–61–807(4), Hall Realty's failure to conduct such an investiga-

tion of the permitting issues cannot be the basis for a negligent misrepresentation or fraudulent representation claim. Specifically, Hall Realty cannot be negligent for failing to ascertain the accuracy of its representations regarding the RV park, or recklessly indifferent to facts only an investigation would have revealed, when it had no duty as a matter of law to conduct such an investigation.

We thus conclude that the trial court did not err in granting summary judgment in favor of Hall Realty on the negligent misrepresentation and fraudulent representation claims.

### B. Fraudulent Concealment

■ We also conclude that the trial court properly granted summary judgment in favor of Hall Realty on the fraudulent concealment claim.

■ The elements of the tort of fraudulent concealment are (1) the defendant's concealment of a material existing fact that in equity or good conscience should be disclosed; (2) the defendant's knowledge that the fact is being concealed; (3) the plaintiff's ignorance of the fact; (4) the defendant's intent that the plaintiff act on the concealed fact; and (5) the plaintiff's action on the concealment resulting in damage. *Burman v. Richmond Homes Ltd.,* 821 P.2d 913, 918 (Colo.App. 1991).

■ "In order to prevail on a claim of fraudulent concealment, a plaintiff must show that a defendant *actually knew* of a material fact that was not disclosed and that the defendant's intent was to cause the plaintiff to act differently than he might otherwise have done if the information had been disclosed." *Kopeikin v. Merchants Mortgage & Trust Corp.,* 679 P.2d 599, 601–02 (Colo.1984) (emphasis added). A plaintiff must also show that the defendant had a duty to disclose material information. *Mallon Oil Co. v. Bowen/Edwards Assocs., Inc.,* 965 P.2d 105, 111 (Colo.1998).

Because Hall Realty was a transaction broker, it had a duty to disclose to Barfield adverse material facts of which it was actually aware. *See* § 12–61–807(2)(b)(VI) (a

transaction broker shall have the obligation to "exercise reasonable skill and care as a transaction-broker, including ... [d]isclosing to all prospective buyers ... any adverse material facts *actually known* by the broker including but not limited to adverse material facts pertaining to ... the physical condition of the property [and] any defects in the property" (emphasis added)). Here, Barfield's allegation in paragraph 34 of his complaint that "defendants were aware of the non-existence of such permits *or acted with utter indifference thereto*" (emphasis added) is insufficient. Barfield was required to allege and prove that Hall Realty had a duty to disclose and actually knew of the material facts that were not disclosed.

We agree with the trial court's conclusion that the evidence was undisputed that Hall Realty had "no actual knowledge of the permit issues and no reason to think anything other than that this was an operating business." Thus, the trial court did not err in dismissing the fraudulent concealment claim.

The judgment is affirmed.

Judge RUSSEL and Judge LICHTENSTEIN concur.